# IN RE CONTEMPT PROCEEDINGS AGAINST CARLOS LOPEZ DE TORD.

---

### CONTEMPT OF REFEREE'S COURT.

Referee in Bankruptcy—Contempt.
> Disorderly conduct in the presence of a referee holding a session is contempt and will be punished. When a referee begins his session it continues until he declares it adjourned or himself leaves his seat.

Opinion filed March 18, 1919.

---

*Mr. Perez Marchand* and *District Attorney Martin* for the government.

*Messrs. Charles Hartzell* and *J. R. Savage* for defendant.

HAMILTON, Judge, delivered the following opinion:

I should much prefer not to have to decide a case of this sort. Of course it is my duty to decide what has come before me, and I do that every day, but a question affecting a member of this court, such as the defendant here, a member of the bar, touches me very nearly.

It is of the greatest importance that our court be conducted in a proper and dignified manner, and the court held by a referee in bankruptcy is in a very special manner the court itself. The commissioner's court is a different thing,—it is a court apart. The referee is the court itself. If you take the

Re Contempt Proceedings Lopez de Tord.

Bankruptcy Law it is somewhat difficult to tell who is to act, the referee or the judge, and that comes from the fact that the referee is the court. There are only three main things that are done by the judge. Everything else is done by the referee, and he is the court. It is as if this district court was for bankruptcy proceedings sitting in three divisions or four divisions, as the case may be, as there is no difference in the proceedings before a referee in Ponce and proceedings before a judge in San Juan; they are on an equality in that regard.

The referee is not permitted under the law to punish for contempt, he has to refer that to the judge. This is the main difference, and this has been shown in this case, where the referee has certified to me that the defendant on a certain day during the progress of a reference at Ponce struck a gentleman (Mr. de Armas) in the court room; and it is for me to pass on the point.

This is a quasi criminal proceeding. So far as the measure of proof is concerned, I take it that I must be convinced beyond a reasonable doubt. The offense itself, however, is somewhat different from a criminal case in this,—I do not take it that there is any necessary reflection upon the defendant, who is punished for contempt, beyond the fact that he has done something which he should not have done in the presence of the court. It is not like murder or anything of that kind. Punishment is something necessary for the preservation of the dignity of the court; not that the judge is better than anybody else; for if on consideration of the evidence it was shown that the unfortunate occurrence was after the court adjourned, then it is no offense. No matter what occurred before the ref-

Re Contempt Proceedings Lopez de Tord.

eree personally, and no matter what occurs in the presence of
the judge personally, if the court is not in session there is no
offense.

It is a question of the dignity of the American court. There
are one or two things that occur to me. In the first place this
hearing was not had at the United States courthouse, and I
hope that will be corrected. I think that all Federal business
should, if possible, be conducted in the Federal Building; but
that makes no difference for the purposes of this case. The
court is not dependent upon the place, and whatever happened
there was to be considered as in the presence of the court, so far
as the place was concerned. The principal difficulty in the case
is this question—Had the court adjourned? It would seem that
this was an adjourned meeting,—it was what the law calls a first
meeting of creditors held before the referee. It had met a few
days before and had been adjourned to this day, and if I recall
it correctly there had been two sessions on the day in question,—
the court had been in session from 2 or 3 o'clock up to about the
time of this occurrence. The trustee had been selected, and Mr.
de Tord had left the room, that being the principal thing he was
interested in; the claims had been proved, as I understand it,
and the question was, what remained to be done?

I gather from the evidence that there was some formal open-
ing of the meeting, but it would also seem that there was no
formal closing of the meeting. No witnesses testified that the
words were used that "the court stands adjourned." I under-
stand, of course, that a referee's court is less formal, properly so,
than the district court, but it would be well always to have the
opening and closing of the session signified by some word.

Re Contempt Proceedings Lopez de Tord.

There could be no difficulty if the word "adjourned" is used, or something equivalent. This was not done in this case. Technically it may be that the meeting was never adjourned, but it was adjourned sometime. Now when was it adjourned in this case? The incident was after the election of the trustee and whatever was necessary to announce his election, and then it was that Mr. de Tord went out of the room. It seems it was in session all that time.

Mr. de Armas, who represented one or more creditors apparently (he is not an attorney, and if I recollect he is not a witness), was present. He had a power of attorney to represent certain creditors and he had his attorney there. Nevertheless he was present personally, which was his perfect right, for it was a public meeting. He did not have a right, though, to be commenting on the actions of the attorneys in a way to provoke disorder. Of course one can carry on a conversation in a whisper (it is being done right now before me). This is a physical right, however, not a legal right. If anything is said it must be done in this way. Anything else leads to trouble, as in this case. He seems to have been speaking about Mr. de Tord retaining a fee of $500 for services before the adjudication in bankruptcy; and I would like to say that that fee is not before me and I am not passing upon it at all. It will probably come up in some other branch of the case.

So far as appears at present Mr. de Tord had a right to be paid for his services rendered before the bankruptcy, and he had a right to take the money; and, on the other hand, it is a point that the creditors had a right to question if they thought proper; but doing this in a nagging sort of way was what brought about the trouble. Mr. de Tord came back to the room

Re Contempt Proceedings Lopez de Tord.

for his hat. When he left the court room the court was in session and when he returned he thought it was not in session. That people were standing up is no criterion whatever with reference to the session of the court, because it was all a question of different creditors having their say as to their claims and then going from time to time. Standing is no criterion at all. It has not been testified that there were any formal words to the effect that the court was adjourned or that it was not adjourned. In the first place it seems to me that the strongest weight ought to be attached to the statement of the referee himself. He is the court. He does not necessarily keep minutes, but if minutes were kept it would be the minutes that were signed by him. Instead of having minutes to that effect, he comes in court and makes a certificate in the first place and then comes on the stand here. I think his is the best evidence. Of course no man can be put in contempt by the mere statement of an official,—that would never do; but his certificate is prima facie evidence, I think, that the meeting had not adjourned.

Now, how does the whole evidence stand? The lawyer who was the last to present a matter before the court says he was on the floor, that creditors were presenting the question of something connected with the bond to the referee. The person who was keeping the minutes at a table (the regular clerk seems to have left) testified otherwise; he testified that all business was over and that he pushed the minutes over to the referee. The evidence is somewhat conflicting, but it seems to me that the point must be decided this way,—the court was in session up to the time that it adjourned, not up to the time the people took their hats and left. That could be done now, but this court would not be adjourned. Nothing was done, in point of fact,

Re Contempt Proceedings Lopez de Tord.

after this regrettable occurrence, but it does not change the condition of affairs that nothing further was done except the appeal of the man who was slapped. Nothing else happened, but nothing very well could have happened after such an occurrence. The session would naturally be at an end, the people would be in too excited a frame of mind for business. I am of opinion from the evidence—not necessarily from the number of witnesses—that the court was still in session at the time of this occurrence. It was in session until the judge or referee had said the meeting was adjourned or, if nothing was said, until he had physically left the table. I do not know of any other way to decide the point. That the referee stands up is not an adjournment of the court. I might stand up and sit down again without adjourning court. Unless adjournment is announced, the judge must physically leave the desk or leave the room before the court can be said to be adjourned. The referee or judge might remain—I frequently do—to make some memorandum, and the court is not adjourned until that is finished. It is necessary to make memoranda and I stay here not infrequently by myself, with only the clerk and marshal, to make the proper entries. It is a close question,—not of law, but of fact,—but, everything being before me, I feel without a reasonable doubt that the court was still in session when this very regrettable incident occurred.

That being so, what is to be done about it? There was great provocation for this act. Mr. de Armas considered that he had a right to make comments (I do not think that he had in the way it was done); but, whatever the provocation, the defendant gave way to temper or something else at the wrong time. I do not know that there is ever a right time, but this was cer-

Re Contempt Proceedings Lopez de Tord.

tainly the wrong time and place. If he had called Mr. de Armas out of the room, I can only say that the matter would have been beyond my jurisdiction; but he did not call him out of the room. He felt himself insulted. Whether it was intended as an insult I am not here to pass on, but it was so taken by Mr. de Tord, and he acted upon the impulse. Nevertheless it was the wrong time and place, and the only question to my mind is what punishment should be inflicted. If the referee had succeeded in what I think was well meant and properly done, when he went to Mr. de Tord and asked him to apologize for his action,—if that had been accomplished and all certified up to me, I hardly think it would be necessary to go any further. It does not come before me, however, with any apology whatever. The evidence is that the defendant declined to make apology for anything that occurred; so it is simply a question of punishment.

Now I do not think it is a case for either of the two things which would be most regretted by me and I think most felt by a member of the bar. I do not think it is a case for imprisonment, and I do not think it is a case for disbarment for any length of time. What was done did infringe the dignity of the court, but it was done on the spur of the moment and was done without any intention, I am sure, of infringing the dignity of the court. Nevertheless it was done. The conclusion of the court therefore with reference to defendant's slapping a man in the presence of the referee before the meeting was adjourned is that the defendant pay a fine of twenty-five dollars ($25) and costs. Personally I regret very much to impose it, but I do not see any escape from it. That is all I think should be done in the matter.